IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ALLISON M. JENSEN,

Plaintiff,

vs.

THOMAS G. BARLAS, JR., GEORGE
BARLAS, and MICHELLE BARLAS,

Defendants.

No. C 04-3081-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  A. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . 7
  B. Jensen's Malicious-Prosecution Claim . . . . . . . . . . . . . . . . . 9
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . 9
      2. Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      3. Application of the law . . . . . . . . . . . . . . . . . . . . 16
          a. Want of probable cause . . . . . . . . . . . . . . . . . 16
          b. Special injury . . . . . . . . . . . . . . . . . . . . . 19
  C. Jensen's Abuse-Of-Process Claim . . . . . . . . . . . . . . . . . . . 20
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . 20
      2. Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . 21
      3. Application of the law . . . . . . . . . . . . . . . . . . . . 22
  D. Jensen's Civil Conspiracy Claim . . . . . . . . . . . . . . . . . . . 26

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In this diversity action, the Iowa defendants seek summary judgment in their favor on the Wisconsin plaintiff's claims of malicious prosecution, abuse of process, and civil conspiracy. The claims in this lawsuit arise from the assertion by one of the defendants of counterclaims for defamation and fraud in the plaintiff's lawsuit in state court for sexual abuse and pregnancy discrimination. In response to the defendants' motion for summary judgment in this action, the plaintiff asserts that she has produced more than enough evidence to generate genuine issues of material fact on the challenged elements of her claims.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here a detailed dissertation of the undisputed and disputed facts in this case. Rather, the court will provide sufficient facts, both undisputed and disputed, to put in context the parties' arguments for and against summary judgment. Some of the facts presented here have been gleaned from the parties' briefing or the documents they submitted in support of or resistance to the motion for summary judgment, even though they were not found in any party's statement of facts, where the court has nevertheless considered those facts necessary to the context of the present litigation or to the context of the pending motion for summary judgment.[1]

---

[1] In attempting to glean additional facts from the record that are pertinent to the context of the present lawsuit and the motion for summary judgment, however, the court will not indulge the parties in their attempts to retry the underlying state court lawsuit.

In 2000, plaintiff Allison Jensen was employed by Prime Time, Ltd., doing business as The Prime 'n Wine restaurant, in Mason City, Iowa. The business was operated by the defendants, Thomas Barlas, Jr., his wife, Michelle Barlas, and his brother, George Barlas. Jensen accused Thomas Barlas of sexually assaulting her in July 2000 in the course of a "business trip" to Minneapolis, Minnesota, while she was intoxicated. Thomas Barlas has always maintained that the two had consensual sex. Some weeks subsequent to this incident, Jensen discovered that she was pregnant, and she accused Thomas Barlas of being the father of her unborn child. The Barlases contend that, at the same time that Jensen was accusing Thomas Barlas of being the father of her baby, she was also leading her boyfriend to believe that he was the father of the baby. DNA testing after the baby was born confirmed that Jensen's boyfriend was the father of the baby. In the meantime, however, the dispute between the parties here became acrimonious to the point that Jensen contends that she was forced to quit her employment with the defendants' business.

In 2002, Jensen filed suit against Thomas Barlas and Prime Time, Ltd., in Iowa District Court for Cerro Gordo County, asserting claims of sexual assault and pregnancy discrimination. Jensen contended (and still contends) that the sexual assault and discrimination caused her to suffer Post-Traumatic Stress Disorder (PTSD). The defendants in the state court case responded by denying Jensen's claims and, later, by amending their answer to assert counterclaims, *inter alia*, for fraud and defamation. The fraud counterclaim was based on allegations that Jensen fraudulently represented to Thomas Barlas and others that Thomas Barlas had sexually assaulted her and that he was the biological father of her child with the intent to deceive Thomas Barlas and to extort money from him. The defamation counterclaim was, likewise, based on allegations that Jensen made false statements to others that Thomas Barlas had sexually assaulted her and that he was the father of her child, causing injury to Thomas Barlas's reputation and

business.  In the action now before the court, the Barlases contend that the counterclaims in the state court action were filed on advice of counsel, although Jensen contends that any advice of counsel was tainted by the false statements of the Barlases on which those claims were based.  Jensen contends that, in the course of discovery in her state court action, and during the trial of that action, Thomas Barlas engaged in harassing and intimidating behavior that aggravated her PTSD, and that George Barlas attempted to "stare her down" while his brother was testifying at trial so obviously that the trial judge admonished him not to continue such conduct.

It is undisputed that the trial judge in the state court proceedings declined to dismiss Thomas Barlas's counterclaims or to grant summary judgment in Jensen's favor on those counterclaims and that, during trial, the state court judge also declined to grant either of Jensen's motions for directed verdict on Thomas Barlas's counterclaims.  Similarly, it is undisputed that the jury eventually found for Jensen on her claims of sexual abuse and pregnancy discrimination, awarded her actual and punitive damages on those claims, and also found in Jensen's favor on the defendants' counterclaims.  The state court trial judge determined that Jensen was equitably estopped from recovering on her pregnancy discrimination claim, that the Barlases were entitled to an offset against the jury verdict on the sexual abuse claim, and that Jensen's recovery had to be reduced accordingly.  That ruling is apparently on appeal to the Iowa Court of Appeals.  It is also undisputed that Jensen did not seek sanctions in state court against either the defendants or their attorney for failing to make a reasonable inquiry to determine whether there was an adequate factual and legal basis for their counterclaims in that action.

## B.  Procedural Background

The disposition of Jensen's state court action in her favor did not end the legal disputes between the parties.  Instead, on October 14, 2004, Jensen filed her Complaint in this diversity action in this court.  In Count I of her Complaint, Jensen asserts a claim of "malicious prosecution" against Thomas Barlas, based on allegations that Thomas Barlas caused the counterclaims for defamation and fraud to be filed in the state court action, with malice and without probable cause, that the action ended favorably to her, but that she was, nevertheless, damaged by being forced to defend against the counterclaims, because she incurred additional attorney fees and expenses and suffered additional emotional distress.  As relief on this claim, Jensen seeks actual and punitive damages, as well as interest and costs of this action.  In Count II, Jensen asserts a claim of "abuse of process," also against Thomas Barlas, based on allegations that the counterclaims for defamation and fraud in her state court action were used primarily for the purpose of harassing and intimidating her, not for their intended use, and that such use of legal process was improper and malicious, and proximately caused her damages.  As relief on this claim, she again seeks actual and punitive damages, as well as interest and costs of this action.  Finally, in Count III of her Complaint, Jensen asserts a claim of "conspiracy" against "all defendants," based on allegations that the other defendants participated in a conspiracy with Thomas Barlas to commit the wrongs of abuse of process and malicious prosecution, as a proximate cause of which she has been damaged.  Jensen, again, seeks actual and punitive damages, as well as interest and costs of this action, as relief on this claim.

Michelle Barlas filed an Answer to Jensen's Complaint on December 15, 2004, and Thomas and George Barlas filed a joint Answer on January 3, 2005.  In their Answers, the defendants denied all claims against them.  On October 17, 2005, Michelle Barlas filed a

notice in this action of the filing of a petition in bankruptcy and it appears that she has taken no further part in these proceedings. Thomas and George Barlas, however, later filed an Amended And Substituted Answer on February 10, 2006, again denying Jensen's claims and asserting several affirmative defenses.

Trial in this matter is currently set to begin on August 21, 2006. However, on December 30, 2006, Thomas and George Barlas jointly filed the Motion For Summary Judgment (docket no. 23) now before the court, seeking summary judgment in their favor on all of Jensen's claims, so that, if the motion is granted in its entirety, it would obviate the need for trial.[2] After extensions of time to do so, Jensen filed her resistance on April 28, 2006 (docket no. 37), and then filed her supporting brief on May 1, 2006 (docket no. 41). On May 15, 2006, the Barlases filed a reply (docket no. 42) in further support of their motion.

By order dated June 20, 2006 (docket no. 43), at the request of both the defendants and the plaintiff, the court set oral arguments on the Barlases' motion for summary judgment for June 30, 2006. At the oral arguments on June 30, 2006, plaintiff Allison Jensen was represented by Mark Sherinian of the Sherinian & Walker Law Firm in West Des Moines, Iowa. Defendants Thomas and George Barlas were represented by Ronald J. Pepples in Parkersburg, Iowa. The parties' oral arguments, like their briefs, were well-prepared and informative. The court finds that this matter is now fully submitted.

---

[2]Michelle Barlas has neither been dismissed from the case nor joined in the other defendants' motion for summary judgment. Therefore, the case could, theoretically, continue against Michelle Barlas, albeit subject to the automatic stay arising from Michelle Barlas's bankruptcy.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a prosecuting or defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims at issue. FED. R. CIV. P. 56(a) (summary judgment for claimant) & (b) (summary judgment for defending party). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same). The court is prohibited from making credibility judgments or engaging in fact-finding from conflicting evidence on a motion for summary judgment. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1075 (8th Cir. 2006); *Yates v. Rexton, Inc.*, 267 F.3d 793, 800 (8th Cir. 2001).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME*

*Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The court will apply these standards to the Barlases' motion for summary judgment on Jensen's claims, taking each claim in turn.

## B. Jensen's Malicious-Prosecution Claim

### 1. Arguments of the parties

In support of his motion for summary judgment on Jensen's claim of malicious prosecution, Thomas Barlas[3] contends that Jensen cannot generate genuine issues of material fact on two essential elements of her claim: (1) lack of probable cause for his counterclaims for defamation and fraud; and (2) "special injury" to Jensen caused by the prosecution of those counterclaims. Thomas Barlas contends that probable cause evidently *was* present for his counterclaims, because the state court judge overruled Jensen's motions to dismiss, for summary judgment, and for directed verdict on those counterclaims, so that the counterclaims were only resolved in Jensen's favor after a full jury trial on the merits. Moreover, Thomas Barlas asserts that the counterclaims were filed on advice of counsel, even though he acknowledges that advice of counsel is not required to show probable cause. He also argues that Jensen has never asserted that the filing of the claims was sanctionable under Iowa rules, apparently asserting that Jensen's failure to seek such sanctions suggests that even she acknowledges that the claims were supported by probable cause. As to the other challenged element of this claim, Thomas Barlas contends that Jensen has utterly failed to produce evidence of a cognizable "special injury" or "special damages," because her allegations of "stress" are simply not sufficient, and because any

---

[3]Jensen's malicious prosecution claim in Count I is directed only against Thomas Barlas; Jensen alleges in Count III that George Barlas conspired with Thomas Barlas to commit the malicious prosecution. Thus, the arguments concerning the malicious prosecution claim are framed in terms of Thomas Barlas's challenge to Jensen's ability to generate genuine issues of material fact on her claim in Count I. In his motion for summary judgment on Count III, George Barlas contends that he cannot be held liable for malicious prosecution as a co-conspirator, because the malicious prosecution claim fails as a matter of law, for the reasons asserted by Thomas Barlas in his challenge to that claim.

"stress" was caused by her own misrepresentations about who was the father of her baby, not by his actions. In any event, he contends, allegedly defamatory statements published in the course of judicial proceedings are privileged.

In response, Jensen argues that she has submitted sufficient evidence to generate genuine issues of material fact on the challenged elements of her malicious prosecution claim. She contends that evidence of the lack of probable cause for Thomas Barlas's counterclaims of defamation and fraud includes evidence that Thomas Barlas's conduct during depositions was sufficient to raise credibility issues in the mind of his own counsel before the trial, and Thomas Barlas's testimony at trial was substantially impeached. Jensen contends that Thomas Barlas cannot raise advice of counsel as demonstrating probable cause, where the advice of counsel was based on Thomas Barlas's false statements. She also contends that she has pointed to evidence of special damages, including testimony of her treating psychologist to the effect that Jensen was "re-victimized" by the litigation of the defamation and fraud counterclaims and by Thomas Barlas's conduct in discovery concerning those counterclaims. Thomas Barlas's conduct, she contends, aggravated her PTSD to the point where she became completely withdrawn from both her attorney and her psychologist. Thus, she contends that she has shown evidence of much more than garden variety "stress." She also contends that she has uncompensated medical expenses in the amount of $300 as the result of aggravation of her PTSD, because the trial judge in her state case ruled that the jury could not award damages for emotional distress arising from the litigation rather than from the sexual abuse and pregnancy discrimination. She suggests that, if the court is in doubt as to the sufficiency of her evidence of special damages, this court should certify an appropriate question to the Iowa Supreme Court.

In reply, Thomas Barlas reiterates that there is no better evidence of probable cause for his counterclaims for defamation and fraud than the state court trial judge's refusal to take those counterclaims away from the jury. Moreover, he contends that his trial counsel in state court made clear that the counterclaims were filed on his advice and that nothing ever led trial counsel to believe that the counterclaims should be withdrawn. As to damages, Thomas Barlas contends that, since the trial in state court concluded on or about September 30, 2004, Jensen has not seen any health care professionals; can only say that she has some anxiety; has not taken any prescription medications for depression; will rely only on depositions and medical records of the psychologist used in the state court trial; intends to call the same witnesses who testified in the state court action; can only identify $300 in medical expenses for the alleged aggravation of her PTSD; and that the worst description of the defendants' behavior that she can muster is that their conduct was "disgusting." This evidence, he contends, is far from sufficient to generate genuine issues of material fact on the special injury and special damages required to support a claim of malicious prosecution.[4]

2.    *Applicable law*

"Abuse of process" and "malicious prosecution" are similar torts, in that both involve "improvident use of the courts." *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa

---

[4]The defendants have not moved to dismiss this action for lack of diversity jurisdiction, owing to insufficient amount in controversy, although such an argument would seem to follow from their assertion of lack of any cognizable "special injury." *See* 28 U.S.C. § 1332(a) (the court has subject matter jurisdiction over actions involving diversity of citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"). The court will not pursue the matter *sua sponte*, however, where Jensen has alleged sufficient amount in controversy in her Complaint, and the defendants have denied that allegation only for lack of knowledge.

1990).  Even so, the Iowa Supreme Court has recognized that the two claims have different "focus[es]," because "'[m]alicious prosecution occurs when an action is instituted without foundation, [while] abuse of process may be found when [legal process] is . . . used to attain a collateral objective beyond that anticipated by the process.'"  *Id.* (quoting Note, *A Lawyer's Duty to Reject Groundless Litigation*, 26 WAYNE L. REV. 1561, 1565 (1980), and also citing *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986)); *see also Lyons v. Midwest Glazing, L.L.C.*, 235 F. Supp. 2d 1030, 1040-41 (N.D. Iowa 2002) (quoting *Wilson*).  The Iowa Supreme Court long ago made clear that a claim for malicious prosecution will lie for a prior, unsuccessful civil claim, not just for a prior criminal prosecution.  *See, e.g., Aalfs v. Aalfs*, 246 Iowa 158, 160, 66 N.W.2d 121, 124 (1954) (expanding the action to allow a claim for special injury for an unfounded civil claim for rescission of a contract affecting a business); *see also* RESTATEMENT (SECOND) OF TORTS §§ 674, 681A (stating the elements of a malicious prosecution claim based on an underlying civil action instigated or continued without probable cause).

The Iowa Supreme Court has stated that there are six essential elements to a claim of malicious prosecution:

> (1) a previous prosecution; (2) [instigation] of that prosecution by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff.  This damage to the plaintiff must be for an arrest of the person, seizure of property or special injury—injury that would not ordinarily result in all similar cases involving such a claim.  *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996) (citations omitted).

*Whalen v. Connelly*, 621 N.W.2d 681, 687-88 (Iowa 2000); *Wilson v. Hayes*, 464 N.W.2d 250 (Iowa 1990); *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988).[5]  In this case,

---

[5]This court has edited the quotation of the elements of a claim of malicious prosecution from *Whalen*, above, to state the second element in terms of "instigation" of the prior prosecution by the defendant.  In *Whalen* and *Employers Mutual Casualty Company*, upon which the court in *Whalen* relied, the Iowa Supreme Court actually identified the second element of a claim of malicious prosecution as "investigation" of the prosecution by the present defendant.  *See Whalen*, 621 N.W.2d at 687-88; *Employers Mut. Cas. Co.*, 552 N.W.2d at 643.  In contrast, in *Wilson*, on which the court in *Employers Mutual Casualty Company* in turn relied, *see Employers Mut. Cas. Co.*, 552 N.W.2d at 643 (citing *Wilson* for the elements of the tort), the second element is stated as "'*instigation* of that prosecution by the defendant.'"  *Wilson*, 464 N.W.2d at 259 (emphasis added) (quoting *Royce*, 423 N.W.2d at 200, and also citing RESTATEMENT (SECOND) OF TORTS §§ 674, 681A, as setting forth comparable elements).  Similarly, the RESTATEMENT (SECOND) OF TORTS, upon which the court in *Wilson* also relied, defines the pertinent element as "initiation, continuation or procurement of civil proceedings against another," *see* RESTATEMENT (SECOND) OF TORTS § 674; *see also* RESTATEMENT (SECOND) OF TORTS § 681A (stating the element as "the defendant has initiated, continued or procured the civil proceedings against [the plaintiff]").

Obviously, the difference between "investigation" and "instigation" of the prior prosecution is substantial.  For example, evidence of lack of "investigation" might give rise to an inference of "want of probable cause" and "malice," but proof that the defendant did investigate does little or nothing to suggest that the prosecution was "malicious" or "without probable cause."  Hence, the unaccountable shift from "instigation" in *Wilson* and *Royce* to "investigation" in *Whalen* and *Employers Mutual Casualty Company* is troubling.  There seems little doubt, in light of common sense and the case history cited above, that the second element of the tort requires "instigation" of the prior prosecution by the defendant, not "investigation" of the prior prosecution by the defendant.  Although the erroneous metamorphosis of the second element, from "instigation" in *Wilson* to "investigation" in *Employers Mutual Casualty Company*, might well have been no more than a scrivener's error, it is unfortunate that the error was then perpetuated in *Whalen*, with the result that the error has very nearly become enshrined in Iowa law.

All that said, it is perhaps fortunate that the second element of a malicious prosecution claim is not at issue on Thomas Barlas's motion for summary judgment on

(continued...)

Thomas asserts that Jensen cannot generate genuine issues of material fact on either the fourth element (want of probable cause) or the sixth element (damages) of her claim of malicious prosecution. Therefore, the court will consider these two elements in more detail.

This court has attempted to clarify the "probable cause" element of a claim of malicious prosecution under Iowa law, as follows:

> "Probable cause" for a civil action, the lack of which establishes the fourth element of the tort, is "knowledge of a state of facts which would lead a person of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the suit is justified." *Brown v. Monticello State Bank*, 360 N.W.2d 81, 87 (Iowa 1984); *see also Elliott [v. Clark]*, 475 N.W.2d [663,] 666 [(Iowa Ct. App. 1991)] (applying this definition, citing *Brown*, in the context of a malicious prosecution claim). One does not need to be "certain of the outcome." *Wilson*, 464 N.W.2d at 261. Rather, the test is an objective one of whether there are "reasonable grounds for believing the suit is justified." *Id.*

*Hanson v. Hancock County Mem. Hosp.*, 938 F. Supp. 1419, 1446-47 (N.D. Iowa 1996). In *Royce v. Hoening*, 423 N.W.2d 198 (Iowa 1988), the Iowa Supreme Court contrasted dismissal of a charge, after a grand jury refused to indict on that charge, which it held was *prima facie* evidence of want of probable cause for the charge, with dismissal of a counterclaim only after a trial on the merits, following denial of a motion for summary judgment on that counterclaim on the basis of disputed material facts, which the court held was sufficient to support a conclusion that there was probable cause for the counterclaim. *See Royce*, 423 N.W.2d at 200-01.

---

[5](…continued)
Jensen's claim of malicious prosecution.

Much more recently, the Iowa Supreme Court has reaffirmed the "special injury" requirement for proof of malicious prosecution. *See Foley v. Argosy Gaming Co.*, 688 N.W.2d 244, 246 (Iowa 2004) (answering "yes" to the certified question, from another judge of this federal court, "Does the requirement of 'special injury' to state a claim for a malicious prosecution action still remain the law of Iowa?"). Somewhat more specifically, "'[i]n [Iowa] the rule always has been no cause of action arises from malicious prosecution unless there has been either an arrest, seizure of property, or a special injury sustained which would not necessarily result in all suits prosecuted to recover for like causes of action.'" *Id.* (quoting *Brody v. Ruby*, 267 N.W.2d 902, 904 (Iowa 1978)). In applying the "special injury" rule, the Iowa Supreme Court has "'distinguished between the ordinary trouble and expense which regularly attend litigation (whether legitimately or maliciously prosecuted) and the unusual hardship arising from arrest, seizure of property or other special circumstances.'" *Id.* at 248 (quoting *Royce*, 423 N.W.2d at 201). Thus, the costs of defending against lawsuits, although they may be significant, are costs that "regularly attend all forms of litigation, and as such, are not 'special injuries' for purposes of proving malicious prosecution." *Id.* The court also found in *Foley* that mere "stress" and "anxiety" that "'inhere[d] in the very nature of the action'" were not "special injuries" sufficient to sustain a malicious prosecution claim. *Id.* at 248-49 (quoting *Aalfs v. Aalfs*, 246 Iowa 158, 168, 66 N.W.2d 121, 127 (1954)). More pointedly, the court stated that "[t]he attendant stress and anxiety [from a lawsuit] are thus also part and parcel of the ordinary trouble of the process, and plainly do not constitute special injury." *Id.* at 249 (citing *Royce*, 423 N.W.2d at 201). Ultimately, the court held, "Special damages must be proved and do not include . . . stress." *Id.*

*3.    Application of the law*

    *a.    Want of probable cause*

To assist the court in determining whether or not Jensen can generate genuine issues of material fact on the "want of probable cause" element of her malicious prosecution claim, the court finds that it would be helpful to review the elements of the two counterclaims that Jensen contends were maliciously instituted by Thomas Barlas without probable cause. Under Iowa law, to prove a claim (or counterclaim) for defamation, the claimant must prove that the opposing party "'(1) published a statement that (2) was defamatory (3) of and concerning the [claimant], and (4) resulted in injury to the [claimant]."' *Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)*)*. In addition, unless the allegedly defamatory statement is defamatory *per se*, the claimant must also prove that the statement was false and was published with malice. *Id.* Under Iowa law, to prove a claim (or counterclaim) of fraud, the claimant must prove (1) a representation by the opposing party, (2) falsity of the representation, (3) scienter (*i.e.*, knowledge of falsity), (4) intent to deceive, (5) materiality of the misrepresentation, and (6) justifiable reliance by the claimant upon the representation, resulting in injury to the claimant. *See Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005); *see also Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005) (in the case of a claim of fraudulent non-disclosure or concealment, stating the first element as having made a false representation or having concealed a material fact). The issue here, again, is whether Jensen has generated any genuine issues of material fact that Thomas Barlas did not have "'knowledge of a state of facts which would lead a person of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the [the claim at issue] [wa]s justified.'" *Hanson*, 938 F. Supp. at 1446-47 (so defining "probable cause," quoting *Brown*, 360 N.W.2d at 87).

The court finds that Jensen has pointed to evidence in abundance from which a reasonable finder of fact could infer that Thomas Barlas asserted the counterclaims of fraud and defamation to harass and humiliate Jensen, *i.e.*, that the counterclaims were, in some sense, "malicious." *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324. In contrast, the court finds that whether or not Jensen has pointed to evidence from which a reasonable factfinder could conclude that Thomas Barlas asserted the counterclaims *without probable cause* is a much closer question.

In Jensen's favor, the court has considerable doubt that, on the facts known to Thomas Barlas at the time of the counterclaim, a reasonable person in his position could have believed that his sexual encounter with Jensen had been consensual, and that he, therefore, had probable cause to believe that she was defaming him by asserting that he had sexually assaulted her or that she was fraudulently misrepresenting that he had sexually assaulted her. *See Kiesau*, 686 N.W.2d at 175 (falsity of the allegedly defamatory statement is an element of defamation); *Smidt*, 695 N.W.2d at 22 (falsity of the representation and knowledge of falsity are elements of fraud). Moreover, in *Royce v. Hoening*, 423 N.W.2d 198 (Iowa 1988), upon which Thomas Barlas relies, the Iowa Supreme Court did not state a bright line rule that where the trial court had denied a motion for summary judgment on an allegedly malicious claim, based on its conclusion that there were disputed issues of material fact, and had only disposed of the allegedly malicious claim after full trial on the merits, probable cause was necessarily established for the allegedly malicious claim. *Royce*, 423 N.W.2d at 200-01. Rather, in *Royce*, the Iowa Supreme Court held that there was no error in the conclusion that the party charged

with malicious prosecution of a counterclaim for breach of an oral option contract to buy rental property had rebutted any presumption that his counterclaim had been without probable cause, and indeed, had shown that it had been supported by probable cause, where the court trying the allegedly malicious counterclaim had been convinced on a motion for summary judgment that disputed issues of material fact existed, and had not dismissed that claim until a full trial on the merits persuaded that court that the counterclaim could not be proved, and where there was also deposition testimony from the party asserting malicious prosecution that the parties had, indeed, had a conversation over sale of the property in question. *Id.* Thus, whether or not survival of a claim until trial on the merits, including denial of dispositive motions on that claim by the trial court, demonstrates probable cause for the claim is a much more fact-specific issue than Thomas Barlas seems to suggest.

Ultimately, this court finds that it cannot determine this fact-specific question on the summary judgment record, particularly where the fact-specific determination of whether or not Thomas Barlas had probable cause for his counterclaims turns in large part on credibility issues (specifically, credibility issues concerning whether or not the sexual encounter between Thomas Barlas and Jensen was consensual) that are not amenable to summary judgment. *Mershon*, 442 F.3d at 1075 (the court is prohibited from making credibility judgments or engaging in fact-finding from conflicting evidence on a motion for summary judgment); *Yates*, 267 F.3d at 800 (same). Therefore, Thomas Barlas is not entitled to summary judgment on Jensen's claim of malicious prosecution based on her alleged failure to generate any genuine issues of material fact on the "want of probable cause" element.

### b. *Special injury*

The court turns, therefore, to the question of whether or not Jensen can generate genuine issues of material fact on the "special injury" element of that claim. The court concludes that she cannot do so.

As Thomas Barlas contends, the only "special injuries" that Jensen asserts are "stress" and "anxiety" arising from the prosecution of the counterclaims and from his conduct and the conduct of his brother during pre-trial discovery and trial of the state court case. The Iowa Supreme Court held in *Foley* that mere "stress" and "anxiety" that "'inhere[d] in the very nature of the action'" were not "special injuries" sufficient to sustain a malicious prosecution claim and that "[s]pecial damages must be proved and do not include . . . stress." *Foley*, 688 N.W.2d at 248-49 (quoting *Aalfs*, 246 Iowa at 168, 66 N.W.2d at 127). Thus, it appears that Jensen has not pointed to any evidence supporting any sufficient or cognizable "special injury."

Jensen nevertheless contends that she can escape this apparent bar on her claim, because her stress was unusually severe. The problem with this contention is that nowhere in its decision in *Foley*, or elsewhere that the court has found or that the parties have brought to the court's attention, did the Iowa Supreme Court suggest that the *degree* of "stress" might somehow be so unusual as to constitute "special injury." Although the Iowa Supreme Court observed in *Foley* that a "special injury" is one that "would not *ordinarily* result in all similar cases involving such a claim," *Foley*, 688 N.W.2d at 246 (emphasis added; internal quotation marks and citations omitted), the Iowa Supreme Court held that "stress" and "anxiety," without restriction or modifier and, thus, presumably of whatever degree, "inhere[d] in the very nature of the action," and were "part and parcel of the *ordinary* trouble and process," such that they "do not constitute special injury. *Id.* at 248-49 (emphasis added; citations and internal quotation marks omitted). Faced with

the categorical statement of the Iowa Supreme Court that "special injuries . . . do not include . . . stress," *id.*, this court finds no basis to certify to the Iowa Supreme Court the question of whether *some degree of stress* arising from the prosecution of the claim could constitute "special injury" for purposes of a claim of malicious prosecution.

Therefore, Thomas Barlas is entitled to summary judgment in his favor on Jensen's claim of malicious prosecution in Count I of Jensen's Complaint in light of Jensen's failure to generate genuine issues of material fact on the "special injury" element of that claim. *Celotex Corp.*, 477 U.S. at 323 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law").

### C. Jensen's Abuse-Of-Process Claim

Thomas Barlas also contends that he is entitled to summary judgment in his favor on Jensen's claim of abuse of process in Count II of her Complaint. The court's analysis of that contention, again, begins with a summary of the parties' arguments.

### 1. Arguments of the parties

Although Thomas Barlas acknowledges that lack of probable cause is not an element of a claim of abuse of process, he nevertheless contends that Jensen cannot generate genuine issues of material fact on all of the elements of her abuse-of-process claim. Notwithstanding that the jury ultimately rejected his defamation and fraud counterclaims, Thomas Barlas contends that Jensen has not pointed to any evidence demonstrating that the counterclaims were prosecuted for any other purpose than to seek recovery for fraud and defamation. He contends that the Iowa Supreme Court has rejected a civil action based on allegedly intentional or negligent representations as the basis for a lawsuit against the claimant. Thomas Barlas contends that Jensen's suit seeks to recover against him merely

because he did not predict what the jury in the underlying state court action would do with his counterclaims.

Jensen contends, however, that she has generated genuine issues of material fact that Thomas Barlas can be held liable for abuse of process for a claim arising out of false statements made to secure legal process. She also contends that the record generates genuine issues of material fact, at least, that Thomas Barlas instituted and conducted the litigation of his counterclaims for the collateral purpose of harassing and intimidating her. She contends that, while the underlying state court action has been completed, she should, nevertheless, be able to pursue a claim to prevent Thomas Barlas from abusing the litigation process with impunity.

In reply, Thomas Barlas contends that Jensen has not alleged or demonstrated that he acted with some ulterior purpose unrelated to the state court action. Instead, he contends that the record demonstrates that the counterclaims were pursued solely for the purpose of prosecuting the wrongdoing alleged in those counterclaims. He also contends that allegedly defamatory matter published in the course of judicial proceedings is privileged.

### 2. Applicable law

This court recently summarized the requirements for proof of an abuse-of-process claim under Iowa law, as follows:

> The Iowa Supreme Court has explained that "[a]buse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001) (quoting *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421 (Iowa 1997)). Thus, "[t]he essence of this tort is an improper purpose for using the legal process."

> *Fuller*, 567 N.W.2d at 421. There are three elements to an
> abuse-of-process claim under Iowa law: (1) the use of a legal
> process; (2) its use in an improper or unauthorized manner;
> and (3) resulting damages. *Gibson*, 621 N.W.2d at 398;
> *Thomas v. Marion County*, 652 N.W.2d 183, 186 (Iowa
> 2002); *Fuller*, 567 N.W.2d at 421-22; *Palmer v. Tandem
> Mgmt. Servs.*, 505 N.W.2d 813, 817 (Iowa 1993). A claim
> for abuse of process can be asserted even before the
> underlying, allegedly abusive proceeding is concluded, because
> the wrongful act upon which the claim is based is the
> commencement of the allegedly abusive action. *Penn v. Iowa
> State Bd. of Regents*, 577 N.W.2d 393, 400 (Iowa 1998).

*International Motor Contest Ass'n, Inc. v. Staley*, ___ F. Supp. 2d ___, 2006 WL
1667889, *22 (N.D. Iowa June 19, 2006). This court also noted that "'[a]n abuse of
process can occur even though there is probable cause to bring the action and the original
action terminates in favor of the plaintiff,'" if the primary purpose of the action was
nevertheless improper. *Id.* at ___, 2006 WL 1667889 at *23 (quoting *Palmer*, 505
N.W.2d at 817). In addition, the Iowa Supreme Court has explained, "The mere filing of
a counterclaim is insufficient to sustain a finding of abuse of process. Nor can the failure
of a counterclaim, without more, furnish proof of some collateral advantage gained by
pursuit of the claim." *Royce*, 423 N.W.2d at 202 (citing *Tomash v. John Deere Indus.
Equipment Co.*, 399 N.W.2d 387, 390-91 (Iowa 1987)).

### 3. Application of the law

In essence, Thomas Barlas contends that Jensen cannot generate any genuine issues
of material fact that he had an "improper purpose" for pursuing his counterclaims for
defamation and fraud, as required by the second element of a claim of abuse of process.
This court recently considered the requirements for proof of this element in some detail,
as follows:

As to the second element, "'[t]he plaintiff must prove that the defendant used the legal process *primarily* for an impermissible or illegal motive.'" *Gibson*, 621 N.W.2d at 398 (quoting *Wilson*, 464 N.W.2d at 266, with emphasis in the original). Abuse-of-process claims under Iowa law often fail on the merits, because of the high burden imposed by the Iowa Supreme Court for this second element. *Fuller*, 567 N.W.2d at 422; *accord Thomas*, 652 N.W.2d at 186 (citing *Fuller*). . . .

As the Iowa Supreme Court has explained,

Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. [*Palmer*, 505 N.W.2d at 817]. This amounts to "a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.* (citing *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284-85 (Iowa 1983)).

*Fuller*, 567 N.W.2d at 421. To put it another way, proof of an ulterior motive for the plaintiff's suit, standing alone, is not enough. *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986); *accord Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 209 (Iowa 1995); *Palmer*, 505 N.W.2d at 817. Rather, "[a] prerequisite for recovery is evidence that the person committed some act in the use of process that was not proper in the regular prosecution of the proceeding." *Id.* at 664. Therefore, a party sued for abuse of process "is not liable if he [or she] has done no more than carry the process to its authorized conclusion, even with bad intentions." *Wilson*, 464 N.W.2d at 267; *accord Johnson*, 533 N.W.2d at 209 (quoting *Wilson*). Still more specifically,

Abuse of process will not lie for a civil action that inconveniences a defendant or for one filed in expectation of settlement. [*Wilson*, 464 N.W.2d at 267.] Additionally, there is no abuse of process when the action is filed to intimidate and embarrass a defendant knowing there is no entitlement to recover the full amount of damages sought.

*Palmer*, 505 N.W.2d at 817. . . .

To explain what is meant by "*primarily* to accomplish a purpose for which [the process] is not designed," the Iowa Supreme Court has adopted Comment *b* to section 682 of the RESTATEMENT (SECOND) OF TORTS, which states the following:

> "*Primarily.*" The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.
>
> For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

*Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 429-30 (Iowa 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 682, cmt. *b*). The Iowa Supreme Court affirmed a jury verdict of abuse of process, where the defendant had told witnesses that it was going to "nickel and dime [the plaintiff] to death" and "bleed" the plaintiff by filing litigation against the plaintiff, and there was evidence that the defendant stood to benefit from media coverage of the litigation involving its competitor, despite the defendant's contention that harming the plaintiff was not the defendant's "primary" purpose. *Id.* at 430.

*International Motor Contest Ass'n, Inc.*, ___ F. Supp. 2d at ___, 2006 WL 1667889 at *22-*24.

The court finds Jensen's assertions that the counterclaims were asserted primarily to harass and humiliate her to be insufficient, as a matter of law, to sustain her abuse-of-process claim. It is clear that mere "'inconvenience'" to the other party, filing of a suit in expectation of settlement, and even filing the claim "'to intimidate and embarrass a defendant knowing that there is no entitlement to recover the full amount of damages sought'" do not constitute sufficiently "improper" purposes to sustain an abuse-of-process claim. *Id.* at ___, 2006 WL 1667889 at *23 (quoting *Palmer*, 505 N.W.2d at 817). This is so, because the Iowa Supreme Court takes "[a] very restrictive view" of the "improper purpose" element. *Palmer*, 505 N.W.2d at 505. Jensen has not identified anything that the counterclaims were intended to "extort" from her that fell outside the scope of the proper goals of the litigation. *See International Motor Contest Ass'n, Inc.*, ___ F. Supp. 2d at ___, 2006 WL 1667889 at *23-+ 24 ("'The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.'") (quoting *Pundzak, Inc.*, 500 N.W.2d at 429-30, in turn quoting RESTATEMENT (SECOND) OF TORTS § 682, cmt. *b*). Thus, Jensen has not generated any genuine issue of material fact of a cognizable "improper purpose" for the counterclaims to support her abuse-of-process claim.

Jensen nevertheless contends that her claim for abuse of process should be allowed to go forward to keep Thomas Barlas from "abusing" the process with impunity, by which she apparently means to sanction him for basing his claims on false allegations and for his boorish conduct during discovery and trial in the state court proceedings. A party who bases a claim on allegations that the party knows to be false has certainly acted "improperly" in some sense—whether a legal or moral sense, or both, the court need not

decide. The proper action to obtain redress for assertion of a claim based on allegations that the claimant knows to be false, *i.e.*, asserting a claim for which the claimant knows that there is no probable cause, is a malicious prosecution claim. The court concluded, above, that Jensen's malicious prosecution claim fails on her inability to generate genuine issues of material fact on the "special injury" element.

Therefore, Thomas Barlas is entitled to summary judgment in his favor on Jensen's claim of abuse of process in Count II of her Complaint in light of Jensen's failure to generate genuine issues of material fact on the "improper purpose" element of that claim. *Celotex Corp.*, 477 U.S. at 323 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law").

### D.  Jensen's Civil Conspiracy Claim

Both Thomas and George Barlas seek summary judgment in their favor on Jensen's remaining claim of "civil conspiracy." The court need not recount the parties' arguments concerning this claim, because the court finds no other legally cognizable "wrong" in which the defendants could have "conspired." In *Williams v. Security Nat'l Bank of Sioux City, N.A.*, 293 F. Supp. 2d 958 (N.D. Iowa 2003), this court explained,

> [T]the Iowa Supreme Court has repeatedly "recognized that '[c]ivil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the action.'" *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 302 (Iowa 1994) (quoting *Basic Chems., Inc. [v. Benson]*, 251 N.W.2d [220,] 233 [(Iowa 1977)], and *Lindaman v. Bode*, 478 N.W.2d 312, 317 (Iowa Ct. App. 1991)). . . .  Thus, '[t]he principal element of conspiracy is an agreement or understanding between two or more persons to effect a wrong against or

injury upon another.' [*Basic Chems., Inc.*, 251 N.W.2d at
233; *accord Locksley v. Anesthesiologists of Cedar Rapids,
P.C.*, 333 N.W.2d 451, 456 (Iowa 1983).").

*Williams*, 293 F. Supp. 2d at 972-73. Where Jensen has failed to generate genuine issues
of material fact on all of the essential elements of either her claim of malicious prosecution
or her claim of abuse of process, she likewise cannot generate genuine issues of material
fact that the defendants "conspired" to commit either of those torts. *Id.* Therefore, the
moving defendants are entitled to summary judgment in their favor on Jensen's claim in
Count III of her Complaint that the defendants conspired to commit the torts alleged in
Counts I and II. *Celotex Corp.*, 477 U.S. at 323 (if a party fails to make a sufficient
showing of an essential element of a claim with respect to which that party has the burden
of proof, then the opposing party is "entitled to judgment as a matter of law").

Although this case is apparently stayed with respect to defendant Michelle Barlas,
owing to the automatic stay arising from her bankruptcy petition, the only claim against
her was also the "civil conspiracy" claim in Count III. The "civil conspiracy" claim
against her, therefore, necessarily suffers from the same legal insufficiency that bars
Jensen's "civil conspiracy" claims against Thomas and George Barlas. The court
discussed briefly with counsel for Jensen and counsel for Thomas and George Barlas
whether or not it would be appropriate under the circumstances for the court to grant
summary judgment in favor of Michelle Barlas *sua sponte*, if the court were inclined to
grant summary judgment on Count III in favor of the other defendants, notwithstanding
the stay in bankruptcy on actions against Michelle Barlas. Jensen's counsel opined that
Jensen would likely dismiss the claim against Michelle Barlas if the court granted summary
judgment in favor of the other defendants, clearing the way for entry of final judgment.
Michelle Barlas's counsel did not participate in the oral arguments owing to the stay,

however, so that one of the parties most directly affected by any *sua sponte* summary judgment ruling has not been consulted. Consequently, the court finds that the appropriate course is to wait to see whether or not Michelle Barlas is dismissed from this action or whether one or more of the active parties seeks entry of partial judgment and certification for interlocutory appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## III. CONCLUSION

The court concurs in Jensen's description of the conduct of Thomas and George Barlas as "disgusting." Nevertheless, the court finds, as a matter of law, that none of that conduct is legally cognizable as malicious prosecution or abuse of process and, hence, finds that there was no civil conspiracy to commit either such tort. Consequently, these defendants are entitled to summary judgment on all claims against them.

THEREFORE, the April 28, 2006, Motion For Summary Judgment by defendants Thomas Barlas and George Barlas (docket no. 37) is granted.

IT IS SO ORDERED.

DATED this 7th day of July, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA